IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FIRST NATIONAL BANK OF ARIZONA,
Plaintiff,
v.

MIDWEST MUTUAL MORTGAGE, INC.,
MONICA R. GALVAN a/k/a MONICA CAYUELA
VILMA DIAZ,
Defendants.

No.

FILED: JULY 22, 2008
08CV4144
JUDGE PALLMEYER
MAGISTRATE JUDGE KEYS

TC

# COMPLAINT

NOW COMES Plaintiff, FIRST NATIONAL BANK OF ARIZONA, by and through its attorneys, Craig C. Smith and Michael J. Weik of Smith & Weik, LLC and complains against the Defendants as follows:

## Jurisdiction and Venue

1. This Court has jurisdiction by virtue of diversity of citizenship. The citizenship of Plaintiff is diverse from the citizenship of each of the Defendants. The amount in controversy exceeds $75,000.00.

2. Venue is proper pursuant to 28 U.S.C. § 1391(a) as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

## Parties

3. Plaintiff is a national banking association chartered under 12 U.S.C. § 24, with the State of Arizona designated as its main office in its articles of association and therefore, is a citizen of the State of Arizona.

4. Defendant Midwest Mutual Mortgage, Inc. is a corporation incorporated in the State of Illinois with its principal place of business in Illinois.

5. Defendant Monica R. Galvan a/k/a Monica Cayuela is domiciled in the State of Illinois and therefore is a citizen of the State of Illinois.

6. Defendant Vilma Diaz is domiciled in the State of Illinois and therefore is a citizen of the State of Illinois.

## Allegations Common to All Counts

7. On or about April 21, 2005, First National Bank of Arizona ("FNBA") and Midwest Mutual Mortgage, Inc. ("Midwest Mutual"), entered into a Broker Agreement (the "Agreement") whereby FNBA agreed to originate mortgage loans packaged by Midwest Mutual and submitted to FNBA for processing and/or underwriting, approval and funding. A true and correct copy of the Agreement is attached hereto as Exhibit A and is incorporated herein by reference.

## Count I
## *Breach of Contract v. Midwest Mutual Mortgage, Inc.*

8. Plaintiff incorporates the allegations contained in Paragraphs 1-7 above as its allegations in Paragraph 8.

9. Pursuant to the Agreement, on or about September 2006, Midwest Mutual submitted a mortgage loan application package on behalf of Monica Galvan (the "Galvan Loan Package") for approval by FNBA.

10. Midwest Mutual represented to FNBA that the Galvan Loan Package was for first and second mortgage loans to finance the purchase of an owner occupied residence located at 1709 N. Kedzie Ave., Chicago, IL 60647.

11. Midwest Mutual made certain representations and warranties to FNBA regarding the Galvan Loan Package as set forth in the Agreement, including a representation that all

information submitted in connection with a loan application would be accurate and complete and not false or misleading in any respect.

12. As part of the Galvan Loan Package, Midwest submitted to FNBA a loan application representing that the borrower owned one parcel of real estate.

13. In fact, the borrower owned at least one additional parcel of mortgaged real estate that was not disclosed on the loan application.

14. The false information Midwest Mutual submitted to FNBA as part of the Galvan Loan Package constitutes a breach of the representations and warranties Midwest Mutual made to FNBA in the Agreement.

15. FNBA made demands on Midwest Mutual to cure the breach. Despite those demands, Midwest Mutual has wholly failed to cure.

16. As a result of Midwest Mutual's breach, FNBA has sustained injury in the aggregate in excess of $75,000.00.

17. The Agreement provides that the prevailing party shall be entitled to recover reasonable attorney's fees and costs. FNBA has been required to expend attorney's fees to enforce the terms of the Agreement.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in its favor and against Midwest Mutual Mortgage, Inc., award Plaintiff its reasonable attorney's fees and costs of litigation and for such other relief, as this Court deems just and equitable.

## Count II
### *Fraud v. Monica Galvan*

18. Plaintiff incorporates the allegations contained in Paragraphs 1-17 above as its allegations in Paragraph 18.

19. As part of the Galvan Loan Package, Monica Galvan a/k/a Monica Cayuela ("Galvan") signed a loan application containing a representation that she owned one parcel of real estate.

20. In fact, Galvan owned at least one additional parcel of mortgaged real estate.

21. At the time Galvan signed the loan application, Galvan knew that she owned an additional parcel of mortgaged real estate.

22. Galvan's representations on the loan application were made with the intent to induce FNBA to make a loan to Galvan.

23. In reliance on Galvan's representations on her loan application, FNBA made two loans to her totaling $328,703.28.

24. If FNBA had known that Galvan owned an additional parcel of mortgaged real estate, FNBA would not have made the loans to her.

25. As a result of Galvan's misrepresentations, FNBA has sustained injury in the aggregate in excess of $75,000.00.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in its favor and against Monica R. Galvan a/k/a Monica Cayuela and for such other relief, as this Court deems just and equitable.

## Count III
## *Breach of Contract v. Midwest Mutual Mortgage, Inc.*

26. Plaintiff incorporates the allegations contained in Paragraphs 1-7 above as its allegations in Paragraph 26.

27. Pursuant to the Agreement, on or about October 2005, Midwest Mutual submitted a mortgage loan application package on behalf of Vilma Diaz (the "Diaz Loan Package") for approval by FNBA.

28. Midwest Mutual represented to FNBA that the Diaz Loan Package was for first and second mortgage loans to finance the purchase of an owner occupied residence located at 2508 N. Mason, Chicago, IL 60639.

29. Midwest Mutual made certain representations and warranties to FNBA regarding the Diaz Loan Package as set forth in the Agreement, including a representation that all information submitted in connection with a loan application would be accurate and complete and not false or misleading in any respect.

30. As part of the Diaz Loan Package, Midwest Mutual submitted to FNBA a loan application representing that the borrower owned one parcel of real estate.

31. In fact, the borrower owned at least on additional parcel of mortgaged real estate that was not disclosed on the loan application.

32. The false information Midwest Mutual submitted to FNBA as part of the Diaz Loan Package constitutes a breach of the representations and warranties Midwest Mutual made to FNBA in the Agreement.

33. FNBA made demands on Midwest Mutual to cure the breach. Despite those demands, Midwest Mutual has wholly failed to cure.

34.  As a result of Midwest Mutual's breach, FNBA has sustained injury in the aggregate in excess of $75,000.00.

35.  The Agreement provides that the prevailing party shall be entitled to recover reasonable attorney's fees and costs. FNBA has been required to expend attorney's fees to enforce the terms of the Agreement.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in its favor and against Midwest Mutual Mortgage, Inc., award Plaintiff its reasonable attorney's fees and costs of litigation and for such other relief, as this Court deems just and equitable.

## Count IV
### *Specific Performance v. Midwest Mutual Mortgage, Inc.*

36.  Plaintiff incorporates the allegations contained in Paragraphs 1-7 and 26-35 above as its allegations in Paragraph 36.

37.  Pursuant to the terms of the Agreement, FNBA has the right to require Midwest Mutual to repurchase the Diaz Loans for the Repurchase Price as calculated in the Agreement.

38.  FNBA is ready, willing and able to convey the Diaz Loans to Midwest Mutual for the Repurchase Price.

39.  FNBA has demanded that Midwest Mutual repurchase the Diaz Loans, but Midwest Mutual has failed or refused to do so.

40.  As a result of Midwest Mutual's failure to repurchase FNBA has sustained injury in the aggregate in excess of $75,000.00.

41.  The Agreement provides that the prevailing party shall be entitled to recover reasonable attorney's fees and costs. FNBA has been required to expend attorney's fees to enforce the terms of the Agreement.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in its favor and against Midwest Mutual Mortgage, Inc., award Plaintiff its reasonable attorney's fees and costs of litigation and for such other relief, as this Court deems just and equitable.

**COUNT V**
***Fraud v. Vilma Diaz***

42. Plaintiff incorporates the allegations contained in Paragraphs 1-7 and 26-35 above as its allegations in Paragraph 42.

43. As part of the Diaz Loan Package, Vilma Diaz ("Diaz") signed a loan application containing a representation that she owned one parcel of real estate.

44. In fact, Diaz owned at least one additional parcel of mortgaged real estate.

45. At the time Diaz signed the loan application, Diaz knew that she owned an additional parcel of mortgaged real estate.

46. Diaz's representations on the loan application were made with the intent to induce FNBA to make a loan to Diaz.

47. In reliance on Diaz's representations on her loan application, FNBA made two loans to her totaling $250,000.00.

48. If FNBA had known that Diaz owned an additional parcel of mortgaged real estate, FNBA would not have made the loans to her.

49. As a result of Diaz's misrepresentations, FNBA has sustained injury in the aggregate in excess of $75,000.00.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in its favor and against Vilma Diaz and for such other relief, as this Court deems just and equitable.

Respectfully Submitted,

FIRST NATIONAL BANK OF ARIZONA

s/ Craig C. Smith__________
One of Its Attorneys

Craig C. Smith #6238126
Michael J. Weik # 3125782
Smith & Weik, LLC
10 S. LaSalle St., Suite 3702
Chicago, IL 60603
312-895-4560

08CV4144
JUDGE PALLMEYER
MAGISTRATE JUDGE KEYS

TC

# Exhibit A

1st
BANK OF ARIZONA

Mortgage Banking Services

## BROKER AGREEMENT

This Broker Agreement (the "Agreement") is made and entered into this 21 day of April 2005 between First National Bank of Arizona, a national association ("Lender"), located at 17600 N Perimeter Dr , Scottsdale, Arizona, 85255 and Midwest Mutual Mortgage, Inc., an Illinois ("Broker"), with its principal office at 2554 W. Fullerton Ave. Chicago, IL 60647

## RECITALS

This Agreement is intended to set forth the entire understanding between the parties whereby Lender agrees to originate mortgage loans ("Loans") processed and/or packaged by Broker and submitted to Lender for processing and/or underwriting approval and funding from time to time under programs offered by Lender

## AGREEMENT

1. **Relationship.** Nothing in this Agreement shall be construed as making the Broker a joint venturer, partner, representative, employee, or agent of Lender Broker shall not hold itself out as such, nor shall it use the Lender name in any advertising Broker is an independent contractor, and shall determine the method, details and means of performing all services described in this Agreement

2 **Loan Submission.** Broker shall submit to Lender applications credit information and other data ("Loan Packages") for Borrowers under such programs, terms, and requirements as Lender may establish from time to time Broker shall furnish to Lender at Broker's sole expense such credit, financial, and other information concerning Borrower that Lender may require in determining when to approve and fund the Loan(s), and perform other services as Lender shall require in closing any Loan(s)

3. **No Obligation** Broker is under no obligation to send any Loan to Lender, and Lender is under no obligation to originate any Loans sent by Broker

4. **Fees.** Any fee, commission, or other consideration to be received by Broker with respect to any Loan shall be paid by Lender to Broker only after Lender deducts from the Loan all its fees and charges in connection therewith as specified in Lender's price schedules released from time to time No payment whatsoever shall be owed to Broker by Lender on account of any proposed Loan which is not funded and closed

5 **Broker Warranties.**

(a) Broker represents and warrants the following

(i) Valid Organization Broker is duly organized and validly existing and in good standing under the laws of its state of organization and has all the qualifications, registrations, licenses and permits necessary to carry on its business and to engage in the transactions contemplated by this Agreement In addition, Broker is in good standing, and has not had its approval status terminated, with any governmental agency with whom it conducts business including without limitation, HUD, FNMA and FHLMC Broker has not been restricted from doing business with any mortgage insurance company, except as disclosed to Lender in writing

(ii) Authority Broker has all requisite power and authority to execute, deliver, and perform under this Agreement and its performance hereunder does not violate any provision of law, rule, regulation, order, writ, judgment, injunction, decree, determination, award or agreement presently in effect, or to the knowledge of Broker, pending

(iii) Absence of Claims There is no claim, litigation, investigation, or proceeding pending or, to the best of Broker's knowledge, threatened against or otherwise materially affecting Broker's business or performance of its obligations under this Agreement

(iv) FHA or VA Approvals Broker shall maintain any FHA or VA approvals required for the origination and processing of loans under this Agreement during the term of this Agreement, as applicable

(b) In the event that Lender agrees to close and fund loans from Broker under an FHA sponsorship or VA agency, Broker represents, warrants and agrees to the following, as applicable

(i) Eligibility Broker is in compliance and shall remain in compliance with all eligibility requirements of HUD or VA for originating loans under a sponsorship or agency relationship, including, but not limited to, minimum net worth requirements Should eligibility be impaired, Broker agrees to immediately notify Lender

(ii) Guideline Compliance Broker shall operate in compliance with all of HUD's or VA's guidelines regarding the origination, processing and closing of FHA or VA loans

(iii) Manuals Broker shall retain any required HUD or VA manuals in its branch/office.

(iv) Quality Control Plan Regarding FHA originations, Broker shall maintain an acceptable quality control plan, as required by HUD 4060 1 chapter 6

(v) Annual Fees Broker shall pay any annual renewal fees required by HUD or VA.

(vi) Lock-in Terms Broker shall not sign a lock-in agreement with the borrower until the loan has been locked in with Lender and Lender has accepted the lock-in terms

(vii) Fees and Pricing Regarding FHA originations, Broker shall comply with HUD mortgagee letters 94-43 and 94-16 as well as any other HUD mortgagee letters as they relate to fees, overages and tiered pricing

(viii) HUD Guidelines Broker agrees to comply with all regional HUD office guidelines regarding maximum allowable fees, such as origination fees, inspection fees, attorney fees, overnight delivery fees, etc In the event that it is discovered that Broker has charged fees in excess of those

allowed by HUD, Broker shall promptly refund any excess to the borrower Underwriting approval by Lender shall not negate the responsibility of Broker in this regard

(ix) Insurance or Guaranty Broker acknowledges that Lender will submit said FHA or VA loans for insurance or guaranty Broker agrees to correct any deficiencies in documentation so the loans may be insured or guaranteed

(c) With respect to each Loan Package submitted by Broker to Lender, Broker represents and warrants the following

(i) No Assignment Broker has not assigned, encumbered, brokered or locked in the Loan Package or any interest in the Loan to or with any other party other than Lender

(ii) Compliance with Laws All disclosures required of Broker by Regulation Z issued under the Truth in Lending Act ("TILA") and the Notice of the Right to Cancel prescribed by the TILA, as well as all other required disclosures now existing or hereinafter required by law, have been properly prepared and provided to applicants in a timely fashion Broker's actions with respect to each Loan Package have been made in full compliance with the Truth in Lending Act, Regulation Z, Equal Credit Opportunity Act, Real Estate Settlement Procedures Act, Regulation B, the Fair Credit Reporting Act and all other applicable law and regulations All documents and disclosures are in full compliance with applicable state and federal laws and regulations

(iii) No Fraud or False Statements All documents submitted by the Broker in connection with a Loan Package presented to Lender are, to the best of Broker's knowledge after due inquiry in accordance with standard industry practices, in every respect valid and genuine and no fraud or misrepresentation has occurred in connection with the submission of any Loan Package or origination of any Loan All information (credit and otherwise) submitted in connection with a loan application is, to the best of Broker's knowledge after due inquiry in accordance with standard industry practices, accurate and complete and no information has been submitted which is false or misleading in any respect The term "information" as used in this paragraph shall mean any and all information and documentation obtained from the applicant and any reference source

(iv) Sole Originator Broker warrants that it is the sole originator of all Loan Packages submitted to Lender by Broker pursuant to this Agreement

(v) No Adverse Action To the best of Broker's knowledge, no bankruptcy action, foreclosure proceedings or other court action is pending against the borrower or the mortgaged property action as security for the Loan, other than as disclosed to Lender in writing

(vi) No Claim or Defense The borrower has no claim or defense against Broker or any agent, assignee or successor of Broker by reason of any act or omission of Broker, its directors, officers, agents or employees

(vii) No Broker Payments Broker has not made, directly or indirectly, any payment on (x) the Loan closed or funded by Lender nor on (y) any Loan extended by the borrower to any other person or entity

(viii) Appraisals With respect to each appraisal

(1) Broker understands the requirements of Title XI of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA'), and the regulations implementing Title XI of FIRREA ("Regulations")

(2) The appraisal delivered to Lender complies with Title XI of FIRREA and the Regulations

(3) The appraisal shall have been completed by an appraiser who is fully qualified and competent by his/her training, knowledge and experience to perform the Appraisal, and Broker has verified the appraiser's competency by reviewing the appraiser's education, experience and knowledge

(4) The appraisal shall have been completed without influence from someone who desires a specific value or specific outcome

(5) The appraisal is not based upon a requested minimum valuation, a specific valuation, or the approval of a Loan

(6) The employment of the appraiser was not conditioned upon the appraisal producing a specific value or a value within a given range nor was the future employment of the appraiser conditional upon an appraisal producing a specific value

(7) Employment, compensation and future employment of the appraiser was not based upon the approval of a Loan Package

(8) Neither the appraiser nor any person with an ownership or other financial interest in the company employing the appraiser, is related to, or has any ownership or other financial interest in either the builder/developer, seller, buyer, mortgage Broker or real estate broker/salesperson (or any person related to any of them) involved in the transaction for which the appraisal has been requested, or with the most recent sale or refinancing of any property used as a comparable property in the appraisal

(9) Broker has furnished to Lender an accurate appraisal by a qualified and properly licensed appraiser

(ix) <u>Prohibited Loans</u> None of the Loans submitted by Broker qualify as "high cost loans," "Section 32" loans or are in any other way considered predatory loans under applicable law In addition, none of the Loans qualify as a Texas Home Equity loan pursuant to applicable provisions of Texas law

6. **Remedies for Breach** Upon the occurrence of any breach of the representations, warranties, covenants or conditions contained in this Agreement by Broker, Lender shall have the right to require Broker to repurchase the Loan or Loans affected by such breach for a price equal to the then outstanding principal balance of such Loan(s) plus (i) all accrued and unpaid interest due on such Loan(s) as of the date of repurchase, (ii) any premium or above par pricing paid by Lender for such Loan and (iii) all other fees, penalties, charges or expenses (including reasonable attorney fees) assessed against or incurred by Lender in connection with the Loan(s) (the sum of such amounts, the "Repurchase Price").

Lender may, in its sole discretion, elect to sell any Loan(s) subject to repurchase pursuant to this Agreement to an unaffiliated third party in lieu of requiring Broker to repurchase such Loan(s) Upon the occurrence of such a third party sale, Broker s liability to Lender for such Loan(s) shall be equal to the amount of the Repurchase Price less the actual amount received by Lender in such third party sale (which amount shall conclusively be deemed to be a reasonable mitigation of Lender s damages)

Lender shall have the right of setoff for all amounts owed to it from Broker pursuant to this Section 6 In addition, Lender shall have the right to specific performance in enforcing Broker's obligation to repurchase any Loan pursuant to this Agreement For purposes of this Section 6, a breach of a representation and warranty will be deemed to have occurred notwithstanding any qualifying language in the applicable representation or warranty regarding the Broker's knowledge of such event or condition

7. **Indemnity** Broker shall indemnify and hold harmless Lender, its shareholders, directors, officers, agents, employees, successors and assigns against any loss damage, claim, expense, liability or cost (including reasonable attorney fees) arising from any breach by Broker of the provisions of this Agreement.

8 **No Solicitation/Premium Recapture** Broker agrees that for a period of one year following the origination of any Loan, neither Broker, its agents, affiliates, successors nor its assigns will take any action to solicit any borrower under any Loan in order to effect the refinancing of any Loan General solicitations or mass mailings not specifically targeted at a borrower shall not be considered a breach of this Section 8 Broker agrees to refund to Lender all compensation paid by Lender on any Loan(s) which (i) prepay in full during the first four (4) months after the applicable closing date for such Loan(s) or (ii) Broker has solicited in violation of this Section 8

9. **Covenants**

(a) Additional Documents Broker warrants that it will provide, or cause to be provided, within thirty days of origination of a Loan, any additional mortgage loan documents as required for the sale of the loan and as are reasonably requested by Lender Brokers will assist Lender in complying with any requests for updated documents, clarification of information, or other requests made by its secondary-market investors to effect the sale of the Loan

(b) Financial Statements Broker shall, so often as Lender may reasonably request, but no less often than once each year (within 90 days after Broker's fiscal year end), submit to Lender, financial statements for the previous 12-month period that accurately reflect and completely disclose the financial condition of Broker

(c) Error & Omissions If required by applicable state law, Broker will maintain in full force and effect during the term of this Agreement an Errors & Omissions policy covering losses per incident of at least $300,000

(d) Privacy of Consumer Information

(i) Broker agrees not to disclose any information relating to a specific person that was obtained from applicants or other sources during the loan application process (collectively, "Consumer Information") provided either by applicants or Lender to any affiliate or unaffiliated third party except in accordance with applicable law

(ii) Broker shall provide Lender with its current privacy policy, and will update such policy periodically as required by applicable law

(iii) Broker shall have in place an information security program designed to ensure the security of Consumer Information, protect against unauthorized access to Consumer Information

Broker shall also maintain a written description of its information security program and will provide Lender with a copy of such program upon request

10 **Termination** Either party may terminate this Agreement at any time upon written notice to the other party, provided, however, that the obligations contained in this Agreement relating to all Loans originated pursuant to this Agreement shall survive such termination

11 **Sublicense of AVENUE System** During the term of this Agreement, Broker shall be entitled to submit Loan Packages electronically through Lender's "AVENUE" online underwriting engine Broker agrees to be bound by the Avenue User Terms set forth on Exhibit A hereto for all online submissions made by Broker In addition, Broker agrees to enter an agreement with First American CREDCO substantially in the form of Exhibit B (or another credit reporting company satisfactory to Lender) hereto for the purpose of gathering credit report information in the Broker's name through the AVENUE system Broker understands and agrees that the right to use the AVENUE system may be terminated at any time separately from the remainder of this Agreement at Lender's discretion Each application for a Loan submitted for purchase must be approved by Lender prior to purchase in accordance with the procedures determined by Lender from time to time

12. **Disclosure of Misstatement or Misrepresentation.** Broker acknowledges and agrees that the Lender may report instances of Broker making material misstatements/misrepresentations in connection with a loan, or knowingly aiding a borrower to do the same, to appropriate industry watch groups, agencies, and state and federal authorities or law enforcement agencies

13. **Miscellaneous**

(a) Governing Law This Agreement shall be governed by the laws of the State of Arizona, without regard to conflicts of laws principles Any action arising out of this Agreement shall be initiated only in Superior Court in Maricopa County, Arizona Broker irrevocably consents to the jurisdiction of such court for any matter arising under this Agreement

(b) Entire Agreement This Agreement constitutes the entire Agreement between the parties and supersedes all prior and contemporaneous agreements, representations, and understandings. This agreement shall remain in full force and in effect for all mortgage loans funded by Lender In the event that Lender sells or transfers these mortgages, this Agreement and all Broker representations, warranties, and obligations shall remain in full force and in effect

(c) Confidentiality Broker agrees that it will not, at any time, give or sell any information relating to the Loans to any unaffiliated person or entity Both parties agree to take all reasonable measures to protect the confidentiality of the other party's proprietary loan program information

(d) No Assignment This agreement shall not be assignable by Broker without obtaining the prior written consent of Lender

(e) Notice of Certain Matters Broker shall notify Lender immediately of any material change in its ownership (defined as a 25% or greater change), financial condition, principal management, the status of its applicable state mortgage-lending license or equivalent documentation, or upon the occurrence of any breach of a representation or warranty as set forth in this Agreement

(f) Notices Unless otherwise set forth herein, any notices or other communications in this Agreement provided or permitted to be given by one party to the other, must be in writing and shall be

deemed received upon receipt if personally delivered, upon receipt of electronic confirmation by the sender if transmitted by facsimile or three (3) business days after sending if delivered by certified or registered mail For purposes of notice the addresses of the parties shall be as follows (unless changed by notice to the other party pursuant to this Agreement)

| LENDER | BROKER |
|---|---|
| 1st National Bank of Arizona | Midwest Mutual Mortgage, Inc |
| Mortgage Banking Services | 2554 W. Fullerton Ave |
| 17600 N Perimeter Dr. | Chicago IL 60647 |
| MS 2002-393 | |
| Scottsdale, AZ 85255 | |
| Attention Broker Management | Attention Michael Lehu |
| Facsimile (480) 538-8948 | Fx 773-252-4211 |

(g) Attorney Fees If any legal action or other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled

(h) Waivers Neither any failure by Lender to notify Broker of a potential breach, nor any delay by Lender in notifying Broker of an actual breach shall be deemed a waiver of any rights of Lender under this Agreement Any waiver by Lender of a breach of this Agreement shall not be construed as a waiver of any other or future breach of the Agreement, whether or not similar, nor shall any waiver constitute a continuing waiver No waiver shall be effective unless made in writing by the waiving party

(i) Severability If any provision of this Agreement shall be held invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provisions of this Agreement

(j) Counterparts This Agreement may be executed in one or more counterparts each of which shall be deemed an original and all of which together shall constitute one and the same Agreement

(k) Amendment or Modification Any modification or amendment to this Agreement, and any future agreement between the parties, must be executed by both parties hereto

In witness whereof, the undersigned have signed this Agreement in the capacities hereafter set forth

| BROKER Midwest Mutual Mortgage Inc | FIRST NATIONAL BANK OF ARIZONA |
|---|---|
| By [signature] | By [signature] |
| Name Michael Lehu | Name Olina A Eurtado |
| Title President | Title: Broker / Correspondent Mgr |